The next case we're on is No. 15-1487, Ms. S. et al. v. Regional School Unit 72. Good morning, Your Honors. Richard O'Mara on behalf of the appellant, Ms. S. Could I please reserve three minutes for rebuttal? Yes. This is a case seeking reimbursement under the IDEA for a compensatory placement at a private residential school in which the administrative hearing officer threw out half of the basis of our claim for compensation using a so-called two-year statute of limitations. And the main issue for this court is one of state law, even though it's a federal claim. And that's whether the Maine Administrative Procedures Act entitled the Department of Education in Maine to unilaterally change a major substantive regulation that had been legislatively approved exactly as they had submitted it for review after the review had occurred when they issued new regulations back in 2010. The story of the statute of limitations in IDEA cases in Maine is a confusing one, but essentially what the court needs to know is it was a four-year statute as determined before 2009, but the statute came in two parts. And the statute was borrowed from the federal IDEA and put into Maine regulation as opposed to state statute. Mr. O'Mara, I know there's a lot of procedural complexity to this four- and two-year issue, but let me state for your benefit how I tend to see it. And you should tell me what's wrong with this. It seems to me that when the reduction from four to two years was first proposed, there was plenty of notice as to what the Department of Education was about. It was clear, not from the language itself of the rule, there was a mistake there, but it was clear to the legislature what the department was trying to accomplish. And then it appears that there was, frankly, a Scribner's error, that there was a failure to draft in the rule language that would, in effect, that would accomplish that reduction from four to two years. But then in subsequent years, because of the, to be characterized as the department's unilateral change of the rule anyhow, you do have a provision that does reflect that two-year provision acted upon by the legislature on three different occasions. So when you put those pieces together, why is there a problem here? There's really two issues, and Judge Levy went off on both issues, so I need to address both. One is, was there some type of legislative intent to adopt the two-year statute of limitations for filing claims as opposed to a two-year limitation on looking back from the time of the complaint? And the commissioner, although the commissioner's testimony says wanted to erect a two-year statute, did not propose that to the legislature, proposed only half of that, two-year look back, but not a two-year filing limitation. The rule was very clear, even when proposed to the legislature, four years for filing. And that's why in my testimony I said the commissioner purports to do this, because the commissioner didn't actually submit to the legislature anything that changed the four-year filing limitation, which is really what's operative in this case. Judge Levy has a major mistake in the decision, which the court needs to know about. He goes off on this legislative intent question that Your Honor just raised, and bases his decision on that. But he says that the reason he does this is because of a committee vote that occurred in the education committee in the legislature. And this is in the addendum at page 105 and 106 of his decision. And he says there was a seven-to-five vote in favor of going to a two-year federal statute of limitations. In fact, in Joint Appendix 284, you'll see the hearing vote. The motion of the committee was that it ought not to pass, ONTP. And it was seven in favor of turning it down, five in favor of adopting it. So there is no legislative history that supports changing to the federal rule. Eventually, when the full legislature took a look at this regulation, no statement was made. It was simply approved as written, which was two years look back, four years look forward. So there is no legislative intent. And I think the assumption that the legislature wanted to do this is false. Perhaps the commissioner did, but the commissioner never proposed that. So then you get to the second part, which is the second half of the magistrate judge's decision and the approval by Judge Levy, which is that while there's been three subsequent amendments to the regulations, between the time that the regulation was passed in 2010 and the time they'll be filed, first of all, the APA in Maine says that if you're going to start a change to a regulation, you have to actually flag the change. And there was never notice in any of those rounds that it was going to change from what was there. So if the first effort failed, and we agree with the magistrate judge, it did fail to be effective. When they went back in any other three years to change it, they had to actually change the four to a two, not just assume that the two was already there. As you look at all those, the two is assumed as background, already legislatively approved, not something that's being proposed to change. And in addition, there seems to be an assumption by the court and by the appellee that when there's a vote on these things, the legislature is approving the entire regulation, all 240-some odd pages. And that's false as well. In the record at Joint Appendix 119 and Joint Appendix 199, you'll see examples of these legislative enactments. They're not statutes. They're called legislative resolves. And each one that you study in those three years says that there's not entire approval. What it says is it's a resolve to approve portions of the Maine Unified Special Education regulations. The portions that are approved are the portions that are either underlined or struck through. It's the changes being proposed by the regulators, and the legislature looks only at those changes. Because the four to two change was never proposed, not in 2010, 11, 12, or any time, it's never actually been reviewed by the legislature and approved in any enactment, any resolve that they've made. So our argument here is that this court needs to respect the Maine Administrative Procedures Act and enforce it strictly. You can't look to legislative history. It's not legislation. It's a regulation. And the legislators, even in their committee vote, were not in favor. And then when they actually looked at these changes to other parts of the regulation in later years, they were not in favor. So your position is that the magistrate judge, and I believe the district court also accepted the proposition that the Department of Education, in light of the way the rule was presented to the legislature initially, the Department of Education could not unilaterally go from four to two, given the fact that the legislature had never approved a regulation that reflected that change. And it follows from that conclusion alone that everything that happens afterwards does not remedy that initial defect. Well, it could have remedied it if the department had said there was an error. But they didn't. They never have. And as a footnote in our reply brief, we noted to you that this past summer, the department actually did the same thing again. They made a mistake in their regulation, and now they're doing it differently. Now they're going back to the legislature and saying, what you approved was not what we meant to propose, so we're going to bring it up in the next session to get it fixed. That's what conforming to the Main Administrative Procedures Act requires. And until then, to throw out claims of people like Ms. S., who should be able to rely on the FOIA period because the APA was not followed, is the correct result with the federal law basically incorporating the state rule. If we were to agree with you on this issue, how would it affect the other claims that you've brought before us? Well, the second argument we have about the specific misrepresentation claim would not be necessary because the two years that Ms. S. was basing her claim on, which was ninth grade and tenth grade, the hearing efforts that threw out, and we had two different arguments to get them in. One was the four-year statute, and the second was that there was specific misrepresentations that caused her not to file during those two years. So you'd avoid issue two. Issue three, which has to do with the challenge to the decision about appropriate education in the 11th and 12th grades, which was allowed to go forward, would still need to be addressed. Let me just say a little bit about the specific misrepresentation argument we've made. There's one circuit decision out there, which is the Third Circuit. It's the D.K. versus Abington case, and that case takes a very narrow view of this exception, saying that you basically, if you're the school district, you have to intend to mislead the parent or knowingly deceive them with facts or statements that are made in a way that causes them not to bring their case to hearing. What we want the court to realize is that this exception is part of a tandem set. There are two different exceptions to the statute federally, and this is a federal law question. One of them is for specific misrepresentations. The other is for withholding documents that are required to be given to the families. Each of them turns on language which says, was the parent prevented from requesting the hearing due to one of those two things? They should be interpreted harmoniously. The question in each case should be, what was the effect on the parents, the people who have to file in order to preserve the children's rights? And what's happened is there's a line of cases now on the withholding exception that say there's no intent, no scienter, no deception required. If there's a failure to give the documents the parents needed, then the exception could apply. And D.K. goes against that, and the whole Third Circuit is against that. All the district courts have been there following the circuit as they must. We're asking the circuit to take a different path. Follow the line of cases that is correct on the first prong when interpreting the specific misrepresentation because it makes sense for making sure that parents have the information that they need. Whether they're misrepresented information or whether the information is not given, it has the same effect on whether they can bring claims forward. Mr. O'Mara, there is a separate issue. Whatever the state of mind underlying the misrepresentation, whether it's intentional, whether it's careless, you still have to demonstrate that the effect of that misrepresentation was to induce your client to forego the due process hearing rights that your client has. It's a little hard to see that in this case only because your client, a teacher for some time at the school where her child was present, was fully engaged in this process throughout and seemed to have consistently disagreed with whatever the school district was saying about the progress of her child. This does not seem to be a situation where the parent accepted the school district's account of how well her child was doing. So it's hard to see on this record that kind of reliance that is the other part of the issue here. I see the record entirely differently, Your Honor. Sure. As a teacher at the school, she actually was the perfect target because she trusted the administration. She worked for them. So every time they told her you can't go forward with eligibility because his academics are not showing it or whatever, she trusted them. And you'll notice that every time she thought some new issue had arisen that might get her over the hurdle that the administrators were telling her was there, she would come back and start over. She wouldn't go to due process hearing. She went back and re-referred, and she did it three or four times in order to try to meet their objections and answer the things they misrepresented to her. Thank you. Your Honors, Eric Herlin and Hannah King for the school district in this case. I'd like to go right to the intent of the legislature in this process, this convoluted process. We've been talking about it was very clear to everyone involved that the DOE was proposing harmonizing the state statute of limitations with the federal statute of limitations. That's how they presented it when they first proposed the rule. That's how the commissioner came before the main legislature and presented an effort to harmonize the statute of limitations. That's what the legislature understood the commissioner and the DOE to be proposing. The memorandum that the legislature issued and the judge noted in his opinion only makes this position more clear. It alludes to the seven-to-five vote. And Mr. O'Meara points out it seems to be a seven-to-five vote ought not to pass. And this is simply my recollection and Dick might have one too because we were both there. A deal was then cut outside of the public hearing part to go ahead and approve the rules in that particular regard. But the point of the memo, regardless of seven-to-five votes, the point of the memo is it articulates on the legislative side of this equation exactly what they were considering and exactly what they understood themselves to be considering. An effort by the DOE to harmonize the state statute of limitations with the federal statute of limitations. That was what they were considering. That's what they understood to be happening. And they approved the rules with that understanding. And if all we had were the DOE assertions here, that would be a hard argument to make. But we do have that legislative memo and also the memo to Senator Alfond that exists in the file too that make clear the legislature understood that was the issue. It wasn't the fine points of 422442. What it was all about was the DOE on its own. Mr. Earle, in spite of that history, the magistrate judge, says it goes back to the DOE and they, on their own, unilaterally, and that's how it's characterized, unilaterally decide to change the regulation, even though the legislature did not actually have a regulation before it that implemented the change that everybody intended. And they say that's ineffective. They couldn't do that. So what do you get out of this argument if the courts will have already said that that awareness by the legislature did not permit the department to make the change that it did initially? I don't believe the district court made that ruling. The district court said, based upon the intent here, we're not talking about the DOE's actions here. We have an APA process that was followed that made clear what was intended to happen, what we were doing. There is, just as you noted right at the beginning, there's a Scrivener's error here. There's an oversight. It's a numerical thing. There's a 4 instead of a 2. And it does have an important substantive effect, there's no doubt. But it is Mr. O'Meara doesn't even argue the contrary on this. There is no doubt what the intent was here. So what the DOE is not some unilateral action that is in violation of the APA. They are trying to effect exactly what the legislature intended to do. And there's a 4 instead of a 2, and they correct it. And it is essentially a Scrivener's error. And they're not rewriting a law that the legislature meant to be this odd, only one in the nation, 2 plus 4 arrangement, which hardly advances any purpose at all to write that kind of oddity into the rule. And I don't mean to be here arguing the point. I mean, every document makes clear that people understood what was happening was a proposal to harmonize state statute of limitations with feds. So you get this DOE correction of a Scrivener's error. Well, the main Supreme Court has said with respect to compliance with the Main Administrative Procedure Act, if there is a technical failure to comply with our requirements, you don't have to show prejudice in order to declare the matter null and void. You seem to be suggesting that nobody was hurt by this. And so whatever technical deficiency there was just doesn't matter. Because everybody knew what was intended. What we're arguing here is that we need to respect the main legislative process. I mean, this is a legislative – Mr. O'Meara is framing it as an agency action. We're framing it as a legislative action. Legislature took action. It approved something. And it approved the harmonizing of the state statute of limitations with the federal. That's what they approved. When did they do that? They approved it. It's this vote that we have here, this resolution that we have, and it's on page 107 of the joint app. I mean, this is the final adoption of portions of Chapter 101. This was voted on. What years are you talking about? I'm talking about 2010. I mean, they approved the rules with the Scrivener's error in it. So they approved a rule that did not, in fact, reduce the looking forward statute from four to two years. That's what they approved. They approved a rule that they thought did that. And we may not want to give much definition to state agencies. I mean, if you were making that argument about a statute, it would almost be a laughable argument, wouldn't it? I mean, if you're talking about a statute of limitations, everybody understands what the purpose of the amendment is, but it's not there, and it's not reflected in the statute. You could not argue that the legislative intent overrides the plain language of the statute. The state of Maine law court has said that. You can look at it in state denials, as the district court said. You can even ignore literal meaning if it thwarts clear legislative objective. And there is nothing clearer here than what their objective was. And so the DOE changes two to four, or four to two, because that's what was understood and that's what the debate was all about. And in that narrow context where it's really where the legislative intent is so clear that an action like this would be justified as a Scrivner's error. You're interpreting legislative action here, not DOE action. And what did they mean? And that's what warrants respect in this process. And a willingness to accept a clear intent. I mean, Mr. O'Mara doesn't want us to even look at intent. But the intent is clear. Excuse me. When the legislature in subsequent years acted upon regulations that now reflected the two-year limitation period, there was no notice given. I mean, that was never described as one of the substantive matters that the legislature was addressing with its approval. Isn't that correct? The notice is certainly... The notice is attached to the imperfect, to the Scrivner's error. The notice is not made clear in the same way it was made clear back in 2010. I cannot make that argument that the notice was made as clearly. The court alludes to or mentions the 2012 time where other language in those provisions was changed so you could see it. But it certainly isn't an underlining and deleting in the subsequent language. Our position is that that, in fact, is not a technical violation of the Administrative Procedures Act. It's a complicated argument. I recognize that can go either way. Certainly the rules are out there and they're presented. And it's not obvious on its face that the technical mandates of 8053 and 8072, that the state fell short on. But most importantly here is respecting the legislature's absolute intent in approving these in 2010. And that seems beyond purview. And Mr. O'Meara may get up here in his two minutes closing and say the intent is not clear. But he didn't argue that in his briefs. I mean, they didn't contest that point. For them, intent doesn't matter. And maybe intent isn't a big deal for the agency. But when our state legislature acts or is trying to act, and despite this clear desire to have something happen, we're going to say, well, it's all got to be put on hold for a year. Well, it happens again, even though everyone who participated in the process, everyone understood what was happening. Well, you need to go through the process again. I'd like to address this. We can continue with that. But I want to just make a point about the specific misrepresentation. And Mr. O'Meara is right. It's the Third Circuit that is required a scientia for understanding the specific misrepresentation. That would seem to follow from the verbiage. It's different words being used than the withholding of information. But the more important point in those two exceptions, why they should not be interpreted the same way, a withholding of information, that exception, that very clearly focuses on actions that school officials take or don't take and know that they're taking them or don't taking them, things that are clear to them. I have to give this notice. Oops, I didn't give this notice. That's their business. The specific misrepresentation argument is essentially asking our non-attorneys never to misspeak about the law. And that is a really, that is a high burden to put on non-lawyers, to always get the law right. I mean, you know, if they're having attorneys show up at these meetings every time, maybe they can get counsel to advise them on what amount of jury instructions. But these are just lay people, and they will occasionally, they will occasionally misstate law or not understand law because that's not their training. And to read sensibly like the Third Circuit, this requires a situation where they know they're misspeaking. They know the law is X, and they're saying Y. In that situation, we're going to free the parent from the limitation period as opposed to withhold. Well, counsel, if the school district is asserting that the child is interacting well with other children, to all appearances progressing well, and a parent reassured by that doesn't pursue rights, I can understand why you would be concerned that allowing that kind of representation to, in effect, toll the statute of limitations would be very troublesome. But suppose the representation is that the child takes a test and actually scores very poorly on the test, and through some mix-up the school represents that the child scored very well on the test. So there's a misrepresentation of fact that is very critical in the determination whether the child is or is not doing well, and that causes the parent not to pursue due process remedies. Why should it matter in that situation whether it was a careless misrepresentation or an intentional misrepresentation? Pure factual matter like that. I think that bleeds into the withholding of information. It's not withholding. They just made a mistake. They mischaracterized the results of the test. That's not a specific misrepresentation. That's a mistake. That's just a mistake. If I'm understanding your hypothetical, and I want to make sure I'm understanding your point, because I don't want to miss it, if the school district knows that the test results were X and yet they're lying and say it's Y, that's a specific misrepresentation. Just a simple transpositional error. In fact, the child did very poorly, but it's recorded in a way to suggest the child did very well, and they report that to the parents. That's a misrepresentation of the actual facts, and it's careless, but it has all the consequences that arguably we should be worrying about in this context. I think that kind of mistake will open up the statute of limitations on virtually every case, because there will always be that argument, and you will essentially have to have the due process hearing in a case like this on all the four years rather than on two. I mean, every case the argument will be that you gave me wrong information. I misunderstood. You gave me wrong information. You told me, and this is every case, every eligibility case. You told me, because legal principles meld into factual ones. You told me my child was receiving a FAPE, and he wasn't. You told me there was no adverse effect, and there was. All those cases will have to get at those issues. They would all open up. These exceptions, and they're only exceptions, these exceptions say you get through this door. Either you have withheld records from the kid, and that will allow you to, and especially these procedural right to sue letters that schools hand out, or you can make a showing that somebody really lied to you. It's meant as an exception, and I would represent to you that if it's understood as simply a mistake, every case will allow an argument about that, and that will have to be heard by the hearing officer and have to go through that process. Thank you, counsel. Thank you. Let me start with the last point and go back to the intent. On the specific misrepresentation, Mr. Herlin's arguing that the burden basically should be on the parent, who is less sophisticated about the law, than the special education directors who go to his seminars and get taught this law every year. That's the wrong result. The effect on the parent of having people from the school misrepresent the eligibility standards is one that should create an exception to the statute. In this case, Supplemental Appendix 750, the mother receives a 10th grade first term report card with four F's and a D minus at the end of October 2010. She then makes a referral, says, I think my child is eligible now, and is told in November, the next month, there's no basis even to test him. We're not even going to process the referral to do an evaluation because there's no evidence of an effect on his academics. He's doing fine. That's a misrepresentation. It should have triggered the exception. Back to the intent argument. All I can say on that is this is not a statute. There was no bill. There was no legislative initiative. The legislature's only role is to approve a regulation that's initiated by the Department of Ed. The commissioner, maybe the one who made the Scrivener's Error, we'll never know what went on behind closed doors in Augusta, but he forwarded, actually she at that point, she forwarded to the legislature a four-year filing limitation language and then said in the comments to it, I'd like to harmonize the statute with the federal law, and she also forwarded a two-year look-back provision, which did harmonize. It was confusing. There were two parts to the statute. Only one part in what was submitted was harmonized. The legislature, there's no evidence of any legislative intent to change the filing limitation, and the one thing the district judge cited was wrong if the vote went the other way. It's not the way the judge portrays it. And after that vote was taken, there's no telling what went on behind closed doors. All we know is in that legislative resolve, Joint Appendix 107, it's completely silent. It approves all the changes with no comments at all about the statute of limitations. So the part that was two years to look back was approved. The filing limitation of four years was approved. And then the department, without asking or telling anybody, just changed the part that they wished they had proposed first. The APA needs to be respected. It's a procedural vehicle. This is not looking at the intent of the legislatures. This is not their bill, not their statute. All they have to do is approve or disapprove what comes before them, and they approved it. So the commissioner is stuck with the poor work product that was put before the legislature if she meant to do something else. And that's the way this case should come out. The four-year statute should be allowed to continue unless and until the commissioner proposes something to change it, in which case there will be an APA proceeding about that. Thank you. Thank you. We'll take a very brief recess. Thank you.